IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

THERESA MARY RAMIREZ,

    Petitioner,

vs.

GWENDOLYN MITCHELL, Warden,

    Respondent.

_____/

No. C 02-4941 JSW (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Theresa Mary Ramirez (hereinafter "Petitioner") petitions for a writ of habeas corpus pursuant to 28 U.S.C § 2254 challenging her 1999 conviction following a trial by jury. Respondent, Gwendolyn Mitchell (hereinafter "Respondent"), Warden of the Central California Women's Facility, Chowchilla, California, opposes the petition. On March 24, 2003, this Court ordered Respondent to show cause why the writ should not be granted. On December 28, 2004, Respondent filed an answer to the petition. Having reviewed the parties' papers, the record, and having carefully considered the arguments and relevant legal authorities, the Court hereby DENIES the petition for a writ of habeas corpus.

## PROCEDURAL BACKGROUND

On February 11, 1999, Petitioner was convicted by a jury in the Superior Court of California in and for the County of Santa Clara County of first-degree murder. (Cal. Pen. Code § 187.) The jury also found true the special circumstance of lying-in-wait and that Petitioner personally used a firearm in committing the murder. (Cal. Pen. Code §§ 190.2(a)(15), 12022.7(a).) The jury also found Petitioner guilty of attempted deliberate and premeditated murder with use of a firearm and great bodily injury (Cal. Pen. Code §§ 664/187, 12022.7(a)), and commercial burglary (Cal. Pen. Code § 459). On March 17, 1999, the trial judge sentenced

Petitioner to life without the possibility of parole for the special circumstance murder, consecutive to a sentence of life with the possibility of parole for attempted premeditated murder, consecutive to a sentence of twenty-three years in state prison.

**I.  State Habeas Proceedings**

On March 16, 2001, the California Court of Appeal for the Sixth District Court of Appeal (hereinafter "California Court of Appeal") issued an unpublished opinion affirming the judgement of the conviction and sentence in its totality. (*People v. Theresa Mary Ramirez*, No. H019882, (Cal. Ct. App. Op., March 16, 2001) attached to Answer [(hereinafter "Resp. Ex. A.")]).  On July 11, 2001, the California Supreme Court denied Petitioner's petition for review.

**II.  Federal Court Proceedings**

Following exhaustion of her claims in the California state courts, on August October 10, 2002, Petitioner timely filed her federal petition for writ of habeas corpus now before the Court. Petitioner raises several claims challenging the constitutionality of her convictions.  She contends that the convictions and the resulting sentence were unlawfully obtained in violation of her Fifth, Sixth, and Fourteenth Amendment rights because: (1) the evidence was constitutionally insufficient to prove the special circumstance of murder while lying-in-wait; (2) the jury instruction on lying-in-wait permitted the jury to find her guilty of murder by lying-in-wait without considering whether she had a mental state equivalent to deliberation, as required under California Law; and (3) the admission of evidence concerning hostile encounters between Petitioner and healthcare professionals having no connection with the charges in the case rendered her trial fundamentally unfair. (Pet. at 1-7.)  The Court finds that Petitioner is not entitled to habeas relief on any of her claims, and denies the petition in its entirety.

**FACTUAL BACKGROUND**

The California Court of Appeal summarized the facts of the case as follows:

> Defendant was diagnosed with breast cancer in 1988.  She had a radical mastectomy of her right breast, and subsequently of her left breast, although the second mastectomy was not medically indicated.  Over the next nine years defendant had a series of breast reconstruction surgeries.  She was never happy with the results or with her struggles to get her HMO to pay for the surgeries.
> Dr. Michael J. Tavis, a plastic surgeon in Petaluma, performed the first of several reconstruction surgeries.  Defendant sued Dr. Tavis for malpractice in

1992, but her attorney allowed the case to be dismissed because he did not think Defendant could prevail.

On the morning of July 3, 1997, Dr. Tavis and his wife, who worked in his office, telephoned Kay Carter at home to check on the status of an unconfirmed 8:30 a.m. appointment. Dr. Tavis and his wife then left for the office around 8:25 a.m. En route, they tried calling the office several times to warn Carter that they were running late, but no one answered. Arriving at the office, they saw their patient Helen Gilly West, who had the 8:30 appointment, sitting in front of the building.

The Tavises drove to the rear of the office, where they saw Carter's car parked. Ms. Tavis commented that it made no sense that Carter had not answered their calls to the office, or opened the front door to let West in. Dr. Tavis opined that Carter must have just arrived and that she was probably headed to open the front door right then. The Tavises spoke in the car for "maybe three to five minutes."

The Tavises then entered the back office door. They smelled coffee brewing. Dr. Tavis went towards the front of the office suite, while Ms. Tavis remained in back. Ms. Tavis heard a woman say in a "controlled" tone, that the woman had seen 28 surgeons or that she had seen eight surgeons. Ms. Tavis heard her husband reply, "I'm sorry, I care."

Ms. Tavis then heard four or five popping sounds. Given the date, she first thought the sounds might be firecrackers. Then becoming concerned, Ms. Tavis ran out the back door to a nearby office and asked the receptionist to call Dr. Tavis's office. There was no answer and 911 was called.

Kay Carter was found unconscious in the reception area of Dr. Tavis's office with a single gunshot wound to her head and brain matter leaking out. Dr. Tavis was lying next to her. He had been shot four times and was pronounced dead at the scene.

Three days later, defendant was found unconscious in a San Francisco hotel room after she missed her checkout time. Paramedics asked hotel staff to search for any medication she might have used to overdose. While doing so, staff located guns and ammunition and large sums of cash.

The police were summoned. Given defendant's then-critical condition, police searched for next-of-kin information in the hotel room. An officer recognized Dr. Tavis's name in defendant's address book as that of a recent homicide victim. Petaluma police were called. Apparently defendant was already a potential suspect. After her condition improved, defendant was placed under arrest.

At trial, the defense did not admit defendant shot Dr. Tavis and Carter. Nor did the defense expressly concede that the evidence required a finding of premeditation. On appeal, however, defendant acknowledges that she "could not dispute her identity as Dr. Tavis's killer," given her possession of the murder weapon and strong evidence of motive. There is no dispute that substantial evidence supports the finding that defendant shot both Dr. Tavis and Carter. There was also overwhelming evidence that defendant acted pursuant to a premeditated plan, not all of which we will detail here, given that Petitioner does not challenge the sufficiency of the evidence on that issue.

(Resp. Ex. A at 2-4.)

//

//

//

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). Courts are not required to address the merits of a particular claim, but may simply deny a habeas application on the ground that relief is precluded by 28 U.S.C. § 2254(d). *Lockyer v. Andrade*, 538 U. S. 63, 70-73 (2003) (overruling *Van Tran v. Lindsey*, 212 F.3d 1143, 1154-55 (9th Cir. 2000), in which the Ninth Circuit required district courts to review state court decisions for error before determining whether relief is precluded by § 2254(d)). It is the habeas petitioner's burden to show she is not precluded from obtaining relief by § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412 (2000); *Barker v. Fleming*, 423 F.3d 1085, 1093 (9th Cir. 2005) ("clearly established" federal law determined as of the time of the state court's last reasoned decision); *Alvarado v. Hill*, 252 F.3d 1066, 1068-69 (9th Cir. 2001). "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. The Supreme Court has repeatedly explained that AEDPA -- which embodies deep-seated principles of comity, finality, and federalism -- establishes a highly deferential standard for reviewing state-court determinations. *See id.* at 436. Thus, the Court has emphasized that "[a] federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

4

1    Under section 2254(d)(1), a state court decision is "contrary to" clearly established
2 United States Supreme Court precedents "if it applies a rule that contradicts the governing law set
3 forth in [Supreme Court] cases,'or if it confronts a set of facts that are materially indistinguishable
4 from a decision'" of the Supreme Court and nevertheless arrives at different result. *Early v.*
5 *Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams*, 529 U.S. at 405-06).  Under the "unreasonable
6 application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state
7 court identifies the correct governing legal principle from the Supreme Court's decisions, but
8 unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413.
9    A federal habeas court "may not issue the writ simply because that court concludes in its
10 independent judgment that the relevant state-court decision applied clearly established federal law
11 erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 412.  The
12 objectively unreasonable standard is not a clear error standard. *Lockyer*, 538 U. S. at 75-76;
13 *Clark v. Murphy*, 331 F.3d 1062, 1067-69 (9th Cir.), *cert. denied*, 540 U.S. 968 (2003).  After
14 *Lockyer*, "[t]he writ may not issue simply because, in our determination, a state court's application
15 of federal law was erroneous, clearly or otherwise.  While the 'objectively unreasonable' standard
16 is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts
17 than [the Ninth Circuit] ha[s] previously afforded them." *Clark*, 331 F.3d at 1068.
18    In determining whether the state court's decision is contrary to, or involved an
19 unreasonable application of, clearly established federal law, a federal court looks to the decision
20 of the highest state court to address the merits of a petitioner's claim in a reasoned decision.
21 *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000); *Packer v. Hill*, 291 F.3d 569, 578-79
22 (9th Cir. 2002) (where state supreme court denied habeas petition without comment, looking to
23 last reasoned decision of a state court as the basis of the state court's judgment), *rev'd on other*
24 *grounds*, 537 U.S. 3 (2002).  Here, the California Court of Appeal rendered the last reasoned state
25 court decision.
26    A federal habeas court may also grant the writ if it concludes that the state court's
27 adjudication of the claim "resulted in a decision that was based on an unreasonable determination
28 of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C.

5

§ 2254(d)(2); *Rice v. Collins,* 126 S. Ct. 969, 975 (2006). A district court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This presumption is not altered by the fact that the finding was made by a state court of appeal, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).

Habeas relief is warranted only if the constitutional error at issue is structural error or had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Penry v. Johnson*, 532 U.S. 782, 795-96 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)). Under this standard, if the federal court determines that the state court's harmless error analysis was objectively unreasonable, and thus an unreasonable application of clearly established federal law, the federal court then proceeds to the *Brecht* analysis. *Id.* at 787.

## DISCUSSION

### I. Insufficiency of the Evidence

In her first claim, Petitioner contends that the evidence presented at trial was constitutionally insufficient to sustain the conviction of first-degree murder with the special circumstance of lying-in-wait. She specifically alleges that there was insufficient evidence that she engaged in any substantial period of watchful waiting. A careful review of the record, however, shows that Petitioner is not entitled to habeas relief on this claim.

#### A. Legal Standard

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The relevant inquiry on review of a constitutional challenge to the sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. *See id* at 324. If confronted by

6

a record that supports conflicting inferences, a federal habeas court "must presume – even if it does not affirmatively appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326. After AEDPA, a federal habeas court applies the standards of *Jackson* with an additional layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (2004). Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of *Jackson* and *Winship* to the facts of the case. *Id.* at 1275.

**B. Analysis**

Here, the Court finds that the record does not support Petitioner's contention that the evidence was insufficient to prove the special circumstance of lying-in-wait. Relying on *People v. Morales*, 48 Cal. 3d 527, 557 (1989), Petitioner argues that "a finding of murder while lying-in-wait must also be 'based on a showing of *substantial* period of watching and waiting for an opportune time to act.'" (Pet. at 5 (emphasis added).) Without such a showing, Petitioner asserts, the jury could only speculate about whether the special circumstance had been proven. (Pet at 5.) The validity of Petitioner's interpretation of the requisite period of watching and waiting need not be considered, however, because the Court adopts the well reasoned opinion of the state appellate court that "[i]n the final analysis, the exact timeline of events simply does not matter [because] the evidence would support no reasonable inference that [Petitioner] arrived in Dr. Tavis's office *after* the doctor." (Resp. Ex. A at 6.) The court concluded that "whether defendant concealed herself or her purpose from Carter and then shot both victims at the same time, the evidence was susceptible of only one reasonable interpretation: defendant lay in wait to shoot Dr. Tavis." (*Id.* at 7.) As revealed by the state appellate court's reasoning, Petitioner's challenge is purely academic.

Under California law, the lying-in-wait special circumstance requires "an intentional murder, committed under circumstances which include (1) a concealment of purpose, (2) a substantial period of watching and waiting for an opportune time to act, and (3) immediately thereafter, a surprise attack on an unsuspecting victim from a position of advantage . . . ." *Morales*, 48 Cal. 3d at 557; *see People v. Sims*, 5 Cal. 4th 405, 431-433 ("The element of

7

1 concealment is satisfied by a showing that a defendant's true intent and purpose were concealed
2 by his actions or conduct.  It is not required that he be literally concealed from view before he
3 attacks the victim.")  Thus, under California law, the true test is not in the duration of time as
4 much as it is the extent of the reflection. *People v. Cole*, 33 Cal. 4th 1158, 1224 (2004).
5 Accordingly, a substantial period of watching and waiting includes calculated judgment arrived at
6 quickly, not merely mathematical certainty.  *Id.*

7      A review of the record shows that the state trial court, during a motion in limine
8 proceeding, considered Petitioner's argument regarding her estimation of the time she first
9 appeared at the Dr. Tavis's office.[1]  (RT 3740-42.)  After hearing arguments from defense counsel
10 and the prosecution, the state trial court concluded that the fact that "Ms. Tavis heard a woman's
11 voice say I have been to eight or twenty-eight different surgeons and her husband replying
12 something to the effect, I'm sorry, I care, . . . it seems unlikely to the court that Dr. Tavis would be
13 having some sort of a conversation" with a loaded weapon pointed at him.  (RT 3943.)  In
14 addition, Petitioner concedes that the evidence shows that she was inside Dr. Tavis's office when
15 he arrived for work.  (Pet at 4.)  She also does not dispute that she shot and killed the doctor *after*
16 having shot his receptionist.  (*Id.*)  Based on this evidence, a reasonable jury could find that
17 Petitioner entered the office, shot Carter, then took cover and waited for the opportune moment to
18 kill Dr. Travis.

19      The state appellate court reasonably concluded that the trial court record evidence, when
20 viewed in the light most favorable to the prosecution, was such that a rational trier of fact could
21 have found that Petitioner did "lie in wait" before killing Dr. Travis under California law.  *See*
22 *Jackson*, 443 U.S. at 319.  It matters not that the evidence supporting a finding of lying-in-wait
23 was not direct and/or substantial.  Rather, inferences drawn from that evidence may be sufficient
24 to sustain a conviction.  *See Walters v. Maass,* 45 F.3d 1355, 1358 (9th Cir. 1995).

---

[1] In her attempt to establish this timeline, Petitioner's defense counsel argued during the hearing that the earliest time Petitioner could have arrived at the Dr. Travis's office was at 8:30 a.m.  After arriving at the office, counsel speculated that Petitioner must have waited outside in the parking lot until approximately 8:41 - 8:43.  (RT 3738.)  Therefore, Dr. Travis must have apparently been shot around 8:45 to 8:47a.m., the same time as his receptionist.  (*Id.*)

Viewed in the light most favorable to the prosecution, as required by *Jackson,* the evidence against Petitioner shows that: (1) she purchased a gun several days before the charged offenses; (2) additional guns and ammunition were found in her hotel room after the shooting death of Dr. Tavis; and (3) she tried to sue Dr. Tavis on a previous occasion. In accord with AEDPA's standard of review, the Court cannot say that no rational trier of fact could have found beyond a reasonable doubt that Petitioner's actions satisfied the elements of lying-in-wait. Accordingly, the California Court of Appeal's rejection of Petitioner's insufficiency of the evidence claim was not contrary to, or an unreasonable application of, clearly established federal law, nor an unreasonable determination of the facts in light of the evidence presented at trial. *See* 28 U.S.C. § 2254(d)(1)-(2). Petitioner is not entitled to federal habeas relief, "which means that the state court's determination to that effect must stand." *Early*, 537 U.S. at 11.

**II. Jury Instruction**

In her second claim, Petitioner argues that her Fifth, Sixth and Fourteenth Amendment rights were violated because the jury instruction on lying-in-wait permitted the jurors to find her guilty of murder by lying-in-wait without considering whether she had a mental state equivalent to deliberation, as required under California law. Petitioner also argues that the same instruction reduced the prosecution's burden of proving deliberation. Petitioner's second claim raises two separate issues: (1) whether the instruction was deficient because it did not require the jury to find Petitioner premeditated *and* deliberated the killing;[2] and (2) whether the jury instruction on the special circumstance of lying-in-wait unconstitutionally lessened the prosecution's burden to prove every element of the special circumstance beyond a reasonable doubt. The Court will address these issues in turn.

**A. Standard of Review**

---

[2] Under the California statutes at the time of Petitioner's trial, murder committed "by means of" lying in wait is, by virtue of that aggravating factor, first-degree murder. Cal. Penal Code § 189. Murder that is first-degree, whether for that reason or another, committed in the "special circumstance" that the killing is "while" lying in wait subjects the defendant to a sentence of life without possibility of parole or death. *See id*; Cal. Penal Code 190.2(a)(15). The "by means of" factor enhances the murder to first-degree murder, and the "while" factor allows the first-degree murderer to be death penalty eligible. Here, Petitioner received a sentence of life without the possibility of parole.

9

The Due Process Clause of the Fourteenth Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. *In re Winship*, 397 U.S. at 364. In general, to warrant federal habeas relief, a challenged jury instruction "cannot be merely undesirable, erroneous, or even 'universally condemned,' but must violate some due process right guaranteed by the fourteenth amendment." *Prantil v. California*, 843 F.2d 314, 317 (9th Cir. 1988) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)). To prevail, the petitioner must demonstrate that an erroneous instruction "so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp*, 414 U.S. at 147). In making its determination, this Court must evaluate the challenged jury instructions "in the context of the overall charge to the jury as a component of the entire trial process." *Prantil*, 843 F.2d at 317 (quoting *Bashor v. Risley*, 730 F.2d 1228, 1239 (9th Cir. 1984)). The mere fact that an instruction was allegedly incorrect under state law is not a basis for habeas relief. *Id.* at 71-72.

A jury instruction that omits an element of an offense therefore is constitutional error. *See Neder v. United States*, 527 U.S. 1, 8-11 (1999) (direct review); *Evanchyk v. Stewart*, 340 F.3d 933, 940 (9th Cir. 2003) (§ 2254 case). However, where the trial court simply fails to alert the jurors that they must consider an element of the crime, the omission is harmless if review of the facts found by the jury establishes beyond a reasonable doubt that the jury necessarily found the omitted element. *See Neder*, 527 U.S. at 15-20 (error harmless because "the omitted element was uncontested and supported by overwhelming evidence"); *United States v. Lin*, 139 F.3d 1303, 1309 (9th Cir. 1998) (omission of intent element from charge of making ransom demands harmless error because no rational jury would have made the findings without also finding missing element of the crime).

It is well-established that the burden is on the prosecution to prove each and every element of the crime charged beyond a reasonable doubt. *Winship*, 397 U.S. at 364. The state is not precluded from adopting a rule that makes it easier for the state to meet the requirement of proof beyond a reasonable doubt unless the rule itself shifts or reduces the burden of proof or otherwise violates a fundamental principle of fairness and therefore violates the Due Process

10

Clause. *See Montana v. Egelhoff*, 518 U.S. 37, 54-55 (1996) (due process not violated by a rule excluding intoxication as evidence to refute *mens rea* even though the rule made it easier for the state to prove *mens rea* beyond a reasonable doubt). Due process is violated by jury instructions which use mandatory presumptions to relieve the prosecution's burden of proof on any element of the crime charged. *See Francis v. Franklin*, 471 U.S. 307, 314 (1985); *see also Sandstrom*, 442 U.S. 510. A mandatory presumption is one that instructs the jury that it must infer the presumed fact if certain predicate facts are proved. *See Francis*, 471 U.S. at 314. On the other hand, a permissive presumption allows, but does not require, the trier of fact to infer an elemental fact from proof of a basic fact. *See County Court of Ulster County v. Allen*, 442 U.S. 140, 157 (1979). The ultimate test of the constitutionality of any presumption remains constant -- the instruction must not undermine the factfinder's responsibility at trial, based on evidence adduced by the government, to find the ultimate facts beyond a reasonable doubt. *Id.* at 156 (citing *Winship*, 397 U.S. at 364).

**B. Analysis**

**1. Jury Instruction: Lying-in-wait Special Circumstance**

The trial court gave the following instruction on lying-in-wait pursuant to CALJIC 8.25:

> Murder which is immediately preceded by lying-in-wait is murder of the first-degree. The term "lying-in-wait" is defined as a waiting and watching for an opportune time to act, together with a concealment by ambush or some other secret design to take the other person by surprise even though the victim is aware of the murderer's presence. The lying-in-wait need not continue for any particular period of time provided that its duration is such as to show a state of mind equivalent to premeditation *or* deliberation. The word "premeditation" means considered beforehand. The word "deliberation" means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action.

(RT 3936 – 43.)

Petitioner contends that the trial court erred by omitting the intent requirement from its jury instruction for the lying-in-wait special circumstance by use of, "premeditation *or* deliberation," instead of "premeditation *and* deliberation" for first-degree murder. (Pet. at 6-7.) In support of her argument, Petitioner relies on the wording of California Penal Code section 189, which states that "[a]ll murder which is perpetrated . . . by any other kind of willful, deliberate, and premeditated killing, ... is murder of the first degree." (*Id*.)

11

The California Court of Appeal reviewed the trial court record and concluded that the "disjunctive phraseology in CALJIC No. 8.25 was neither inappropriate nor misleading." (Resp. Ex. A at 8-9, citing *People v. Ruiz*, 44 Cal. 3d 589, 614-15 (1988); *see also People v. Hardy*, 2 Cal.4th 86, 163 (1992) (reaffirming *Ruiz*).) Relying on state law, the state appellate court provided several reasons for its conclusion. First, the court noted that, pursuant to CALJIC No. 101, the jury was expressly told that they "must find deliberation and premeditation." (*Id.* at 9.) In addition, each juror was provided with a verdict form that required the jury to find deliberation *and* premeditation, or to acquit. (*Id.*) Second, the jury found Petitioner guilty of attempted first-degree murder against Ms. Carter, thereby rejecting as a factual matter the argument that Petitioner suffered a mental defect that prevented her from deliberating at the time of the shooting. Although the court noted that it can "envision some circumstances where a defendant might argue that she lost the capacity to deliberate or premeditate after carrying out one killing and before another," where the acts are so close to each other, the alleged incapacity precludes such an argument. (*Id.* at 10.)

Petitioner contends that this decision involved an unreasonable application of controlling United States Supreme Court precedent. (*Id.* at 7.) However, even if this Court assumes *arguendo* that the instruction amounted to constitutional error, viewed in the context of the instructions as whole such error would not have "infected the entire trial such that the resulting conviction violates due process." *Estelle*, 502 U.S. 62. First, as the California Court of Appeal reasoned, in order to return a guilty verdict under the instructions given for attempted murder of Ms. Carter, the jury had to reject the assertion that Petitioner's mental disorder kept her from deliberating. Thus, a review of the facts found by the jury establishes beyond a reasonable doubt that the jury necessarily found the omitted element. Moreover, as the record shows, the trial judge provided each juror with a separate written copy of the jury instructions "so they can read as I read them and they also have them to write on in the jury room so they don't have to pass one set around." (RT 3745-46.) Because the jury is presumed to follow the instructions given by the court, the written instructions would have cured any defect in the oral instruction. *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992).

12

### 2. Burden of Proof

Petitioner contends that the erroneous jury instruction violated her due process rights by depriving her of her "only defense," and thereby, lessened the prosecution's burden to prove that her mental disorders kept her from carefully thinking and weighing the considerations for and against her course of action, *i.e.*, deliberation of watching and waiting. (Pet. at 7.) Petitioner further asserts that by requiring proof only of premeditation *or* deliberation, the court virtually cut the prosecutor's burden in half. (*Id.*)

The state trial court provided several instructions that set out the state's burden of proof. First, the court explained that the presumption of innocence places upon the "People the burden of proving [Petitioner] guilty beyond a reasonable doubt." (RT 3930.) Second, noting that evidence had been received concerning Petitioner's "mental defect or disorder . . . at the time of the commissions of the crimes," (RT 3932), the court explained that such evidence could be considered to determine whether Petitioner actually formed the required "specific intent, predicate, deliberated or harbored malice." (*Id.*) In this regard, the court specifically stated that "the truth of special circumstances must proved beyond a reasonable doubt." (RT 3944.) Given these clear instructions to the jury, the state was not relieved of its burden of proof.

Under the AEDPA deferential standard of review, this Court finds no grounds upon which to grant Petitioner's second claim for relief because the California Court of Appeal's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). Accordingly, this claim for relief is denied.

### III. Admission of Evidence of Prior Acts

In her third and final claim, Petitioner argues that her Fifth, Sixth, and Fourteenth Amendment rights were violated by the trial court's admission of extensive evidence concerning hostile encounters between Petitioner and healthcare professionals having no connection with the charges in her case, and evidence indicating that she had many of these individuals' personal information in a private phone book. Petitioner argues that the foregoing evidence of uncharged prior acts should not have been admitted because the only inference it directly seeks to establish

13

1 is one of propensity to commit the charged crimes. A review of the record shows no merit to this
2 claim.
3 //

### A. Legal Standard

Generally, the admissibility of evidence is a matter of state law, and is not reviewable in a federal habeas corpus proceeding. *Estelle*, 502 U.S. 62; *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985), *cert. denied*, 478 U.S. 1021 (1985). Nevertheless, habeas relief may be warranted for the admission of prejudicial evidence if the admission was fundamentally unfair and resulted in a denial of due process. *Estelle*, 502 U.S. at 72. The failure to comply with state rules of evidence alone is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. *Jammal v. Van de Kamp*, 926 F.2d 918, 919-920 (9th Cir. 1991). Only if there are no permissible inferences that the jury may draw from the evidence can its admission rise to the level of a due process violation. *Id.* at 920. Intent is a permissible inference that the jury may draw from the evidence of prior bad acts. *See Houston v. Roe*, 177 F.3d 901, 910 n.6 (9th Cir. 1999).

### B. Analysis

The prosecution attempted to portray Petitioner as a deeply troubled individual who had become angry over her twenty-eight reconstructive breast surgeries. Under California Evidence Code section 1101, the trial court admitted as evidence of motive, premeditation, deliberation and lying-in-wait, threats Petitioner made against healthcare professionals other than the victims. (RT 2541-45.)[3] The California Court of Appeal rejected Petitioner's challenge to the admission of

---

[3] California Evidence Code section 1101 reads: (a) Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion; (b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act. Cal. Evid. Code § 1101(a), (b) (2001) (emphasis added).

California Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusion of the issues, or

14

1  evidence under section 1101 because "the eventual victims fall within the same class as the
2  persons previously threatened." (Resp. Ex. A at 11.) Because of the risk of prejudice, however,
3  the state appellate court also reviewed the trial court's weighing of the probative value of the
4  evidence against any potentially prejudicial effect. *See* Cal. Evid. Code § 352. Using these
5  principles, the court concluded that the trial court did not abuse its discretion in finding that the
6  probative value of the evidence outweighed its prejudicial effect. (Resp. Ex. A at 11.) As the
7  appellate court noted, "[A]ll of the evidence related directly to what plainly was defendant's
8  ongoing and increasing anger over her breast surgeries. Thus, the threats, implied or direct, were
9  directly relevant to show that defendant had motive to kill [the doctor]." (*Id.* at 11-12.)

10  Petitioner contends that the evidence was improperly admitted under California Evidence
11  Code sections 1101 and 352. However, this presents an issue of state law, which is not grounds
12  for federal habeas relief. *See Estelle*, 502 U.S. at 67-68. The due process inquiry in federal
13  habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered
14  the trial fundamentally unfair. *See Walters,* 45 F.3d at 1357. Under these circumstances, the
15  Court finds that admission of the evidence was not arbitrary or so prejudicial that it denied
16  Petitioner the fair trial guaranteed by due process. *Id.*

17  Petitioner asserts that under *McKinney v. Rees*, 993 F.2d 1378, 1384 (9th Cir. 1993), *cert.*
18  *denied*, 510 U.S. 1020 (1993), the uncharged prior acts were admitted as propensity evidence.
19  The Court is not persuaded. In *McKinney*, the Ninth Circuit addressed the question of "whether
20  the admitted evidence of 'other acts' of the defendant was relevant to a fact of consequence, or
21  was only evidence of character offered to show propensity." 993 F.2d at 1381. After subjecting
22  the contested evidence to "close scrutiny," the court determined that certain evidence of "other
23  acts" did not give rise to any permissible inference making a fact of consequence more or less
24  probable; that such evidence was not relevant to the questions before the jury; and that such
25  evidence was "emotionally charged," "served only to prey on the emotions of the jury," and "lead
26  them to mistrust" the defendant and believe her capable of killing the victim "without much
27  apparent motive." *Id.* at 1382-85. Under such circumstances, together with the fact that the
28

misleading the jury."

15

1 evidence against the defendant was solely circumstantial, the Ninth Circuit concluded that the
2 erroneous admission of propensity evidence rendered the defendant's trial fundamentally unfair in
3 violation of the Due Process Clause. *Id.* at 1385.

4       Contrary to *McKinney*, Petitioner's case is akin to *Walters*, in which the Ninth Circuit
5 upheld the admission of prior acts where  (1) there is sufficient proof that the defendant
6 committed the prior act, (2) the prior act is not too remote in time, (3) the prior act is similar (if
7 admitted to show intent), (4) the prior act is used to prove a material element, and (5) the
8 probative value is not substantially outweighed by prejudice.  *See Walters,* 45 F.3d at 1357-58.
9 Here, the contested evidence of other violent acts was probative of Petitioner's motive, and not so
10 highly inflammatory or emotionally charged as to necessarily prevent a fair trial.  *See id.*
11 Petitioner does not dispute the uncharged threats against other healthcare professionals and
12 treating doctors.  Nor does she dispute that she had many of these individuals' names, addresses,
13 phone numbers and sometimes personal information in a private phone book.  Moreover, the
14 record shows that Petitioner's hostile encounters with these individuals were not too remote in
15 time to the charged offense.  Therefore, inferences relevant to a fact of consequence could be
16 drawn from each piece of the evidence to prove her motive for the attempted murder of Ms.
17 Carter and first-degree murder of Dr. Travis.  Because the evidence admitted was highly
18 probative of a central issue in the case, and its use was properly limited by the trial court's
19 instruction, its admission did not render the trial unfair or violate Petitioner's right to due process.
20 *See id.*

21       Finally, even if the state appellate court's denial of the instant claim "conflicts with Ninth
22 Circuit precedent on a federal Constitutional issue," that decision cannot be overturned on habeas
23 review.  *Duhaime v. Ducharme*, 200 F.3d 597, 598 (9th Cir. 2000)  The AEDPA requires that the
24 state court decision be either contrary to, or an unreasonable application of, a Supreme Court
25 holding.  *Williams*, 529 U.S. at 412.  Although the Ninth Circuit in *McKinney* addressed the issue
26 of admission of "inflammatory evidence," the Supreme Court has expressly declined to rule upon
27 whether the admission of propensity evidence violates due process.  *McKinney*, 993 F.2d at 1384.
28 There is, therefore, no "clearly established Federal law, as determined by the Supreme Court"

16

which could have been violated by admission of the evidence. 28 U.S.C. § 2254(d)(1). Thus, Petitioner cannot show that the state appellate court's rejection of her claim regarding admission of the evidence "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* Nor can the Court say that the evidence had a "substantial and injurious effect or influence" on the jury's verdict in light of the evidence at trial, *Brecht*, 507 U.S. at 638, or that the Court is in grave doubt on this matter, s*ee O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). Accordingly, Petitioner's third and final claim does not entitle her to habeas relief.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The clerk shall enter judgment in favor of Respondent and close the file.

**IT IS SO ORDERED.**

Dated: March 24, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

17